# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANNEL RIEL and CHERIE BINGENHEIMER,<br><br>              Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS INC.,<br><br>              Defendant. | Case No. 16-CV-1191-JPS<br><br><br><br><br><br>**ORDER** |

**1.    INTRODUCTION**

On November 1, 2016, the defendant Navient Solutions Inc. ("Navient") filed a motion to dismiss the plaintiffs Dannel Riel ("Riel") and Cherie Bingenheimer's ("Bingenheimer") (collectively, "Plaintiffs") complaint along with a brief in support of the motion. (Motion, Docket #5; Brief in Support, Docket #6). Plaintiffs filed a brief in opposition on November 22, 2016. (Docket #13). Navient submitted a reply in support of its motion on December 6, 2016. (Docket #15). The motion is fully briefed and, for the reasons explained below, it will be granted in part and denied in part.

**2.    STANDARD OF REVIEW**

Navient has moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This rule provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must

"plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted).

In reviewing Plaintiffs' complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [their] favor[.]" *Id.* at 480-81. However, a complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

## 3. THE COMPLAINT

Accepting the truth of Plaintiffs' well-pleaded allegations and drawing all reasonable inferences in their favor, the relevant facts are as follows. Riel took out a number of student loans to pay for school. The loans were initially serviced by Sallie Mae, but that company created Navient and apparently transferred servicing duties to Navient.

Riel was unable to find gainful employment sufficient to repay the loans and went into default in June 2015. Plaintiffs believe that Navient referred some of the loans to third-party collectors while retaining others to collect on its own. Navient began calling Riel's home phone in August 2015. Plaintiffs note that Riel's wife, Bingenheimer, worked from home and needed to use the phone frequently as part of her work.

At that time, Riel retained his current counsel. Prior to the calling campaign, Riel had attempted to deal with Navient and its collectors himself without success. Feeling stressed by the repeated calls from Navient and the other collectors, Riel asked his lawyer to handle the contacts (and he

Page 2 of 14

Case 2:16-cv-01191-JPS   Filed 01/17/17   Page 2 of 14   Document 16

apparently agreed to do so). Riel told each of the collectors that he had hired a lawyer and wanted all contacts to go through him.

In the evening of September 3, 2015, Riel gave Navient his lawyer's contact information and asked that it cease calling him at home. Navient's operator seemed to not be listening while Riel made these statements. It attempted to call him again early the next morning, but reached Bingenheimer, interrupting her work. The calls continued throughout the fall of 2015, coming repeatedly and potentially using different numbers to mask Navient's identity.[1]

Navient also called Riel's parents at least one time in 2014, and continuing through 2015 and 2016. Riel never gave Navient permission to call his parents and never gave it their phone number. These calls came several times per week, and each time they picked up a call, Riel's parents would inform Navient that Riel did not live there. Navient would respond that it knew Riel was living with his parents and that they were trying to hide him. In one particular call, Navient told Riel's mother that *she* owed student loans and that her home might be sold if she did not pay.

Plaintiffs assert two causes of action. They first allege violations of the Wisconsin Consumer Act ("WCA") for Navient's unconscionable conduct, though they do not cite a particular provision of the law which was violated. Plaintiffs claim that Navient's above-described conduct unfairly takes advantage of customers like them, especially in light of Navient's substantial resources and financial acumen compared to that of the average borrower. They contend that Navient's harassment was aimed at placing undue stress

---

[1] Plaintiffs did not answer all of the calls and so cannot confirm which numbers were used in executing this masking strategy, and which were simply other collectors making their own calls.

on borrowers such that they would make payments on the student loans to the detriment of their other financial obligations. As a result, Plaintiffs pray for the Court to declare Riel's student loans void and order Navient to cease any related credit reporting activity.

Plaintiffs' second cause of action, also pursuant to the WCA, alleges that Navient engaged in illegal collection practices in violation of Wis. Stat. § 427.104(1). These included calling Riel's parents, disclosing the existence of his loans to them, asserting that Riel's mother owed a debt to Navient, ignoring Riel's request that it contact his counsel alone, and harassing Plaintiffs with repeated calls using disguised phone numbers. Plaintiffs claim that Navient's actions caused them mental and emotional suffering. Bingenheimer further contends that she lost her job because Navient's calls continually interrupted her work. Plaintiffs do not explicitly pray for compensatory damages, but they do request punitive damages.

**4. ANALYSIS**

Navient seeks dismissal of different portions of the complaint for different reasons, and in sum requests that the entire action be dismissed. It argues that the first cause of action must be dismissed because the applicable statute, Wis. Stat. § 425.107, provides no independent right of action, and even if it did, Plaintiffs fail to state a viable claim thereunder. Next, Navient contends that all of the first cause of action, and three of the four subparts of the second, are preempted by federal law, namely the Higher Education Act ("HEA") and its attendant regulations. The Court will address each of Plaintiffs' causes of action in turn.

    **4.1    First Cause of Action - Section 425.107**

Though not cited in the complaint, the parties' briefing reveals that Plaintiffs' first cause of action is premised on Section 425.107. This claim must

fail because it has not been raised using the proper procedural vehicle. Section 425.107 provides that if a court finds that any part of a consumer credit transaction or its subsequent related conduct is unconscionable it may, *inter alia*, refuse to enforce the transaction. Wis. Stat. § 425.107(1). As applied here, Plaintiffs contend that the Court should find Navient's collection activity unconscionable, and as a remedy, forgive Riel's loans.

Section 425.107 is subject to a scope provision. It provides that "[t]his subchapter applies to actions or other proceedings **brought by a creditor** to enforce rights arising from consumer credit transactions and to extortionate extensions of credit under s. 425.108." *Id.* § 425.102 (emphasis added). The scope provision, by its plain text, does not permit consumers like Plaintiffs from enforcing Section 425.107's prohibitions on unconscionability via a separate civil lawsuit. *Tammi v. Porsche Cars N.A., Inc.*, 768 N.W.2d 783, 791 (Wis. 2009) ("When examining the statutory language, if the plain meaning is clear, a court need not look to the rules of statutory construction or to extrinsic sources of interpretation. . . . Moreover, [a] statute is not ambiguous merely because the parties disagree as to its meaning.") (quotations omitted)). It implies that they must raise unconscionability in the form of an affirmative defense to Navient's lawsuit to collect the loans, if one is filed.

This is confirmed by the context of Section 425.107 within the WCA. That Section and the scope provision, Section 425.102, appear within Subchapter I, titled "Creditor's Remedies," of Chapter 425. This contrasts with Subchapter III of Chapter 425, titled "Customer's Remedies," which discusses a customer's private right of action, a statute of limitations for those actions, and attorneys' fees and class action considerations. Wis. Stat. § 425.301 *et seq*. Subchapter I of Chapter 425 is also different from Chapter 427, which is the basis of Plaintiffs' second cause of action, for which Navient

does not seek dismissal on scope grounds. Section 427.102, that chapter's scope provision, states that Chapter 427 applies to broadly to "conduct and practices in connection with the collection of obligations arising from consumer transactions." *Id.* § 427.102. Section 427.105 provides that if a customer proves one of the violations listed in Section 427.104, they may recover their actual damages and a statutory penalty as provided in Section 425.304 (from Subchapter III, "Customer's Remedies"). *See id.* §§ 427.104-427.105. In light of Section 425.107's plain language and context, the Court concludes that it confers no independent right of action.

Plaintiffs' arguments to the contrary do not disturb this result. First, they claim that policy considerations favor allowing consumers to pursue unconscionability claims without first being sued by their creditor. Even if it agreed with them, the Court is not at liberty to weigh policy issues when the statute's language is unambiguous.[2]

Second, Plaintiffs contend that courts have previously allowed customers to use Section 425.107 offensively, rather than defensively. However, none of the cited decisions analyzed the effect of Section 425.102 on the application of Section 425.107. *See generally Drogorub v. Payday Loan Store of WI, Inc.*, 826 N.W.2d 123 (Wis. Ct. App. 2012); *Hollibush v. Ford Motor Credit Co.*, 508 N.W.2d 449 (Wis. Ct. App. 1993); *Palacios v. ABC TV & Stereo*

---

[2]Plaintiffs' desired interpretation would also render Section 425.102 superflouous. *Pawlowski v. Am. Family Mut. Ins. Co.*, 777 N.W.2d 67, 72 (Wis. 2009) ("As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous."). If customers could file a separate lawsuit for unconscionable practices, either 1) there is no need for Section 425.102 at all, or 2) it *is* needed to limit other parts of Subchapter I, and the legislature inadvertently placed 425.107 within Subchapter I (instead of Subchapter III, for instance). The Court cannot agree with either proposition.

*Rental of Milwaukee, Inc.*, 365 N.W.2d 882 (Wis. Ct. App. 1985).[3] Further, because it is not jurisdictional, the Court cannot assume that the cited decisions took any notice of the scope issue absent prompting from the defendants. It appears those defendants either acquiesced to an improper cause of action or knew of Section 425.102's limitation and chose to do nothing. This Court's decision is thus not foreclosed by a contrary rulings; in fact, the Court has located only two opinions which even cite Section 425.102, and apart from being three decades old, neither offers any meaningful analysis. *General Motors Acceptance Corp. v. Schalow*, 433 N.W.2d 674 at *2 (Wis. Ct. App. 1988); *Matter of Ingersoll*, 8 B.R. 912, 916 (Bankr. W.D. Wis. 1981).[4]

Finally, Plaintiffs assert that Wisconsin permits plaintiffs to bring traditional affirmative defenses, which Section 425.107 appears to be, as a direct claim. *Zizzo v. Lakeside Steel & Mfg. Co.*, 752 N.W.2d 889, 895 (Wis. Ct. App. 2008). Even assuming the Court agreed that Section 425.107 was analogous to the laches defense at issue in *Zizzo*, they read the case too broadly. The opinion stressed that its holding was "narrower [ ] than the general question of whether a plaintiff may ever invoke laches." *Id.* at 894. Instead, the court found that "the fact that this is a declaratory judgment action is a crucial point," namely that in such actions, the parties' traditional

---

[3]*Hollibush* expressly declined to reach an analysis of Section 425.107, *Hollibush*, 508 N.W. 2d at 813-14, and *Palacios* mentioned that the plaintiff had brought a claim under that Section but gave it no attention, *Palacios*, 365 N.W.2d at 884.

[4]Because this is a diversity action, federal decisions interpreting Wisconsin law are not binding on the Court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To the extent this opinion is inconsistent with other such decisions, it is based on a direct consideration of Section 425.102, which again, only two courts have addressed some thirty years ago.

roles are reversed. *Id.* Here, Plaintiffs have not brought an action for declaratory judgment and do not seek to change their traditional, offensive position.[5] More importantly, the Court must decline to apply *Zizzo* in a manner which would run contrary to Section 425.102's plain language.

### 4.2 Second Cause of Action - Section 427.104

Navient argues that Plaintiffs' Section 427.104 claims are preempted by the HEA and its associated regulations which govern Navient's collection activities.[6] The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824)). This "preemption" doctrine may be applied in three ways: express, field, and conflict preeemption. *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). *Aux Sable* explains:

> Express preemption occurs when a federal statute explicitly states that it overrides state or local law. As for field preemption, it exists when federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act. . . . [C]onflict preemption . . . exists if it would be impossible for a party to comply with both local and federal requirements or where local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

---

[5]Plaintiffs mention that they could seek declaratory relief, and might do so in the future, but the Court cannot allow their Section 425.107 claim to continue based on hypotheticals.

[6]Because Plaintiffs' first cause of action does not survive, the Court will not address Navient's preemption arguments thereon.

*Id.* (citations and quotations omitted). Navient proceeds under the conflict preemption theory.[7] The Court's analysis must begin with "the basic presumption against federal preemption of state law." *Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484, 487 (7th Cir. 2004).

Conflict preemption itself takes two forms. The first occurs when it is actually impossible to comply with both state and federal law simultaneously. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 652 (7th Cir. 2015). The second takes effect when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Navient's argument rests primarily on the second form.

Navient contends that compliance with the WCA in the manner the Plaintiffs' lawsuit demands would prevent it from carrying out its duties as a federal student loan servicer. It cites as the source of these duties a Department of Education ("DOE") regulation, 34 C.F.R. § 682.411, and a Notice of Interpretation (the "NOI") from the DOE providing guidance on that code provision. Lender Due Diligence in Collecting Guaranty Agency Loans, 34 C.F.R. § 682.411 (2014); Stafford Loan, Supplemental Loans for Students, PLUS, and Consolidation Loan Programs, 55 Fed. Reg. 40120-01

---

[7]Navient mentions express preemption in its opening brief but devotes little argument to it. (Docket #6 at 13-14). Its reply concedes that conflict preemption is its sole preemption argument. (Docket #15 at 13) ("[Navient's] motion does not argue that the HEA preempts the WCA in its entirety. Rather, it asserts that the WCA is preempted to the extent it actually conflicts, 'hinders or prohibits' [Navient] from compliance with the HEA or relevant DOE regulations.").

(Oct. 1, 1990).[8] Unlike other circuits, which have found that these and other HEA regulations entirely preempt state consumer protection laws with regard to student loan collection, the Seventh Circuit requires an analysis of the particular claim at issue to determine whether it truly conflicts. *See Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996); *Bible*, 799 F.3d at 652-54; *Johnson*, 102 F. App'x at 487.

Navient argues that two sets of Plaintiffs' claims are preempted.[9] First, Navient asserts that Section 682.411 and the NOI mandate contact directly with Riel, and so his allegations regarding Navient circumventing his counsel are preempted. Plaintiff counters that the WCA does not directly prohibit contact with persons represented by counsel, but instead proscribes "harassment" generally. Wis. Stat. § 427.104(h) (A debt collector may not "[e]ngage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."). Their theory is that Navient harassed them by refusing to direct its contacts through their lawyer, and that the HEA regulations can co-exist with a prohibition on harassment. While this distinction might make it theoretically possible to comply with the WCA and federal law, that is not the only test to be applied. In explaining the need for the NOI, the DOE explained that

> [s]pecific questions have now arisen about the effect of particular State laws that may restrict or prohibit holders of

---

[8]The Court must accept the DOE's interpretation via the NOI, as the Court is not permitted to "substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency," and Plaintiffs do not argue that the NOI is unreasonable. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

[9]Plaintiffs initially contend that Navient is not subject to the above-cited regulations because it is merely a servicer. The NOI, however, specifically includes servicers within the ambit of Section 682.411. 55 Fed. Reg. 40120-01 at 40121.

> GSLP obligations from taking some of the actions required under these regulations. For example, in a number of instances borrowers who were contacted by a loan servicer acting on behalf of a lender after the servicer had been notified that the borrowers were represented by counsel asserted that the servicer had violated State law prohibiting those direct contacts.
>
> . . .
>
> [T]he Department's regulations require lenders and agencies to make a number of contacts with the borrower directly, at specified intervals, using particular warnings to attempt to persuade the borrower to repay the loan.
>
> . . .
>
> These provisions comprehensively regulate the pre-litigation informal collection activity on GSL obligations, by specifically requiring holders to complete a sequence of collection contacts with debtors. These provisions therefore preempt State law that would prohibit, restrict, or impose burdens on the completion of that sequence of contacts either on GSLP loans in general, or on any category of GSLP loans.

55 Fed. Reg. 40120-01 at 40120-21. Plaintiffs attempt to use the WCA's anti-harassment catchall provision to achieve a prohibition on contacting represented parties, a theory which was specifically preempted by the NOI.

Plaintiffs' other arguments on this point are also without merit. They assert that the NOI was silent on contacting represented persons, but that is demonstrably untrue as shown by the above quotation. Plaintiffs also point out that while the DOE restricted state consumer protection laws via the NOI, it "allowed" the Fair Debt Collection Practice Act's ("FDCPA") represented consumer provision to stand. *See* 15 U.S.C. § 1692c(a)(2) (prohibiting contact with consumers whom the collector knows or should know are represented). Even had the Secretary of the DOE wanted to, Plaintiffs offer no argument that he had authority to "allow" or otherwise modify any provision of the FDCPA, a federal law not subject to preemption.

Page 11 of 14

Case 2:16-cv-01191-JPS   Filed 01/17/17   Page 11 of 14   Document 16

Finally, Plaintiffs offer policy considerations lamenting Navient's ability to circumvent his decision to seek counsel, but again, the Court cannot reach those issues when application of the law is clear. The Court must conclude, therefore, that Plaintiffs' claims based on contacting a represented person are preempted because they burden Navient's execution of the HEA's regulations.

The result is different, however, for their claims regarding the frequency of Navient's phone calls. The DOE regulations specify various minimum phone contacts Navient is required to make (or attempt) with Plaintiffs. *See* 34 C.F.R. § 682.411(d) (between 16 and 180 days delinquent, lender must call borrower at least four times), (e) (no minimum number of calls for 181 to 270 days delinquent). These phone contacts must be "diligent," meaning that they must either comprise one successful contact, or two unsuccessful contacts (i.e., no answer). *Id.* § 682.411(m). Finally, there can be no gap in collection activity of more than 45 days. *Id.* § 682.411(b)(2).

Here, it is technically possible to comply with the WCA's anti-harassment provisions and the HEA regulations. *See* Wis. Stat. § 427.104(g) and (h). Further, unlike with represented debtors, the Court finds that a prohibition on harassment offers no obstacle to the enforcement of those regulations, especially in light of the presumption against preemption. Plaintiffs' allegations reveal that Navient's call volume far exceeded the minimum requirements of Section 682.411. As noted in *Weber*:

> [T]he [HEA] regulations do not authorize debt collectors to engage in abusive debt collection activities, and it is a stretch to say that rules prohibiting what a state deems an abusive collection practice obstructs Congress's goals under the HEA. Indeed, in the context of the overall FFEL program, it seems apparent that Congress' goal for the HEA collections

provisions was to ensure that lenders make a good-faith effort to collect, not to maximize loan repayment rates at all costs.
. . .
As long as the required uniform minimum standards set forth in 34 C.F.R. § 682.411 can be reasonably achieved without violating state law, therefore more restrictive state consumer protection laws will not conflict with the federal purposes embodied in the HEA or its implementing regulations.

*Weber v. Great Lakes Educ. Loan Servs., Inc.*, No. 13-CV-291-WMC, 2013 WL 3943507 *4 (W.D. Wis. July 30, 2013). Navient can comply with Section 682.411 without "harassing" Plaintiffs with excessive phone calls. Their claims based on call volume are thus not preempted.[10]

## 5. CONCLUSION

Plaintiffs' first cause of action must be dismissed because it is not cognizable under the WCA. To the extent Plaintiffs' second cause of action asserts violations of the WCA based on contacting a represented customer, those claims are preempted. All of Plaintiffs' remaining claims survive Navient's motion. This includes not only the claims based on call frequency, but also those allegations for which Navient did not seek dismissal, including calling Riel's mother, disclosing information about the debts to her, harassing her and Bingenheimer about Riel's debt, and Navient's practice of disguising its calls using multiple phone numbers.

---

[10]Navient makes a final argument that policy considerations announced in the Wisconsin Supreme Court's *Mussallem* opinion require the Court to reject the entirety of Plaintiffs' complaint. *Mussallem* held that the University of Wisconsin was not subject to the notice provisions of Chapter 425 of the WCA. *Bd. of Regents of Univ. of Wis. Sys. v. Mussallem*, 289 N.W.2d 801, 807 (Wis. 1980). This conclusion was based on a public policy determination that the University, a public institution acting merely as a conduit for the subject loans, was not a "merchant" intended to be subject to the WCA. *Id.* at 806-07. The Court declines to extend *Mussallem* to cover a private loan servicing company like Navient.

Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss (Docket #5) be and the same is hereby **GRANTED in part** and **DENIED in part**; and

**IT IS FURTHER ORDERED** that the plaintiffs' first cause of action and certain bases for their second cause of action (Docket #1 at 5-7) be and the same are hereby **DISMISSED** in accordance with the terms of this Order.

Dated at Milwaukee, Wisconsin, this 17th day of January, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge